UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SHOP RITE, INC.                              CASE NO. 6:23-cv-00456
     Petitioner
Vs.                                                    JUDGE SUMMERHAYES

U.S. DEPARTMENT OF COMMERCE          MAGISTRATE JUDGE
SMALL BUSINESS ADMINISTRATION        WHITEHURST
     Respondent

*****************************************************************************

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
## BY PETITIONER SHOP RITE, INC.

Petitioner SHOP RITE, INC. ("Shop Rite") moves for summary judgment on review of the Final Order of the United States Small Business Administration Office (SBA) in the matter of SBA PPP Loan Number 1031327200.  The material facts are not in dispute and Petitioner is entitled to judgment as a matter of law, for the reasons that follow.

A.      INTRODUCTION

Petitioner seeks review of a final decision by SBA finding Petitioner ineligible for a Paycheck Protection Program (PPP) loan administered by SBA under the provisions Section 1102 of the Coronavirus Aid Relief, and Economic Security (CARES) Act (Pub. L. 116-136) signed into law March 27, 2020.   The matters subject to judicial review are:

1.      June 1, 2022 SBA Final Loan Review Decision finding Petitioner was ineligible for a PPP loan and/or not eligible for PPP loan forgiveness.

2.      October 18, 2022 Decision by the Administrative Judge in SBA Office of Hearings & Appeals ("OHA") denying Petitioner's Appeal of the SBA Loan Review Decision, and

3.    February 9, 2023 Decision by the same Administrative Judge on Petition for Reconsideration, affirming his initial decision, and upholding the June 1, 2022 SBA Final Loan Review Decision.

The Court has jurisdiction of this pursuant to 28 USCA § 1331 and 13 CFR 134.1211(g).

## B.    BACKGROUND FACTS

The PPP Loan Program is a temporary SBA 7(a) loan program designed to help small businesses keep their workers employed during the COVID-19 crisis.  PPP borrowers obtain loans through an SBA approved lender, which services the loan. SBA implements the program and guarantees 100% of PPP loans in the event of default.  PPP loans can be used for payroll and employee benefits costs, mortgage interest payments, rent and lease payments, and utilities.

A PPP borrower may obtain loan forgiveness up to the full amount of its loan for eligible expenses made during the loan's "covered period", (typically, 24 weeks from the date of loan origination), provided at least 60 percent of the PPP loan was used to fund payroll and employee benefits costs.

The lender reviews the application and makes an initial decision regarding loan forgiveness. SBA Office of Capital Access (OCA) may review the loan and issue a final SBA loan review decision on a borrower's eligibility for the loan or for loan forgiveness. 13 C.F.R. §134.1201(b)(1)-(4).

On April 3, 2020, Petitioner applied for a PPP loan with First National Bank of Louisiana (Lender). On April 15, 2020, the loan was approved and FNB disbursed loan proceeds in the amount of $2,502,750.  On June 23, 2021Petitioner filed an application for PPP loan forgiveness. On August 10, 2021, Lender FNB recommended forgiveness of 100% of Petitioner's loan indebtedness.

On June 01, 2022, SBA issued its final loan review decision finding Petitioner was not eligible for the PPP loan or for loan forgiveness. SBA Office of Capital Access (OCA) concluded the Borrower's business, "or together with its affiliates", exceeded the 500 employee SBA small business size standard.

### C.    STANDARD OF REVIEW

The court reviews a decision on a question of law *de novo*. *Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 (5ᵗʰ Cir. 2012).  Where Congress has spoken to the precise question at issue, the court must give effect to the unambiguously expressed intent of Congress and reverse an agency's interpretation that fails to conform to the statutory text. *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 433 (5th Cir. 2021) (*citing Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 (5th Cir. 2018) and *quoting Chevron*, 467 U.S. at 842-44).

### D.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Stout v. Smith Int'l Inc.*, 2023 U.S. Dist. LEXIS 187344, *4-6 (W.D. La. 2023), cit. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).;

If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.* See also Fed. R. Civ. P. 56(c)(1). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* at 249. A dispute about a material fact is "genuine" if the evidence is such that a reasonable [*6] fact finder could render a verdict for the nonmoving arty. Stout v. Smith Int'l 2023 U.S. Dist. LEXIS 187344, *4-6

### E.    ARGUMENT SUMMARY

The determination that Petitioner's business "together with its affiliates" exceeded the small business size standard was clearly erroneous because in the CARES Act Congress waived the SBA Affiliation Rules for purposes of the PPP Loan Program for entities engaged in the restaurant business. Petitioner met the statutory requirements for the Affiliation Waiver because more than 70% of its business locations and more than 72% of its employees were engaged in the deli restaurant business assigned NAICS Code 72.

The final SBA loan review decision should be reversed, because

1.      SBA failed to apply the statutory requirements for the PPP Affiliation Waiver.

2.      SBA exceeded its regulatory authority by enacting and adding a "primary business activity" eligibility requirement, based solely on revenues in addition to the statutory criteria for the Affiliation Waiver.

3.    SBA erred as a matter of law by applying the primary industry test set out in 13 CFR §121.107 to determine whether the PPP Affiliation Waiver applies.

4.    SBA's determination that NAICS Code 72 does not apply to Petitioner's business is based on a clearly erroneous summary of the evidence in the administrative record.

5.    The Agency acted arbitrarily and conspicuously in violation of 5 U.S.C. §706(2), because it failed to reasonably consider the relevant issues, relied on factors Congress did not intend it to consider, and failed to articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  The Decision contains no authoritative basis for copying and pasting government procurement regulations into the PPP scheme, or for allowing an administrative agency decision to preempt congressional intent as set out in the CARES Act Affiliation Waiver.

6.    Alternatively, the Agency acted arbitrarily or capriciously and committed clear error in concluding certain other business entities were affiliates of Borrower under the "identity of interests" test, or by virtue of common ownership or control.

7.    Alternatively, the Agency erred in concluding Borrower exceeded the SBA small business standard without regard to affiliation with other entities, or in finding Petitioner's responses to Agency's requests for information were incomplete.

**F.     ARGUMENT**

The Administrative Procedure Act ("APA") requires the court to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." Bros. Petroleum, LLC v. United States, 569 F. Supp. 3d 405, 410 (ED La. 2021), cit.  5 U.S.C. §706(2)(C).  To determine if an agency exceeded its statutory authority, the court applies the two-step analysis from *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*. 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

Under the first step of *Chevron*, the court asks whether "Congress has directly spoken to the precise question at issue." *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 433 (5th Cir. 2021) (*citing Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 (5th Cir. 2018) and *quoting Chevron*, 467 U.S. at 842-44). If the answer is yes, the court must "give effect to the unambiguously expressed intent of Congress" and reverse an agency's interpretation that fails to conform to the statutory text. *Id.* (*quoting Chevron*, 467 U.S. at 842-43). In its analysis of the statute, the court relies on "authoritative Supreme Court decisions" and "conventional standards of statutory interpretation," looking [**7] to "text, structure, and the overall statutory scheme." *Id.* (*quoting Chamber of Com. v. U.S. Dep't of Lab.*, 885 F.3d 360, 369 (5th Cir. 2018)).

SBA's decision is reversible under traditional *Chevron* analysis without deference to or analysis of the reasonableness of the agency's interpretation, because (a) Congress has directly and unambiguously spoken to the question of eligibility for the Affiliation Waiver in the CARES Act, and (b) the Agency's interpretation and/or application of the criteria failed to conform to the statutory text.

SBA's fundamental error was applying the "primary industry test" set out in 13 CFR §121.107 to determine whether the PPP Affiliation Waiver applies. The Administrative Judge concluded SBA is empowered by Congress or by regulation to "…. clarify, complete, or supply a NAICS code designation" for purposes of the CARES Act or the PPP Affiliation Waiver.   That conclusion, and the result were clearly erroneous, because consideration of the factors listed in §121.107 to determine whether an enterprise meets the small business size standard applicable to the industry by virtue of affiliation is specifically precluded by the CARES Act, 15 U.S.C.S. §636(a)(36) (D)(iv).

The "single NAICS primary industry" theory employed by the SBA Office of Financial Programs in connection with the PPP loan determination in this case was by regulation advisory in nature, and not binding on the parties.  The Administrative Judge erred by adopting OFP's advisory opinion as fact, and then applying Federal Government Contracting regulations by analogy to determine Petitioner ineligible for PPP Affiliation Waiver under the "single NAICS primary industry" theory, in direct contravention of the CARES Act.

That contravention aside, the result was not consistent with the regulatory guidelines the Administrative Judge cited. Assigning multiple NAICS codes is permitted by 13 CFR §121.402(c). Assuming *arguendo,* 13 CFR §121.107 could be applied by analogy to determine eligibility for PPP Affiliation Waiver, assigning multiple NAICS codes would be totally appropriate in the case of a business like Shop Rite, that utilizes a PPP loan in connection with a multi-faceted operation, that includes restaurants in conjunction with other products and services at most of its locations.

In addition to the foregoing, application of 13 CFR §121.107 to deny the PPP Affiliation Waiver is arbitrary and capricious because it is contrary to the Agency's own interpretation of the PPP Loan Program, as reflected in SBA published Guidance on the subject.

1.    PPP Affiliation Exemption for Food Service Business

The PPP Affiliation Waiver for borrowers engaged in the food service business is determinative in this case. SBA erred as a matter of law by applying the 13 CFR §121.107 "primary industry" test to determine whether the PPP Affiliation Waiver applies.

SBA's argument against application of the Waiver, adopted by the Administrative Judge, was:

> "…*in determining a business concern's primary industry under 13 CFR §121.107* the Agency considers distribution of receipts, employees, and costs of doing business among the different industries in which business operations occurred. (*emphasis added*)

While that may be true in instances where 13 CFR §121.107 applies, the Agency is not required to determine the Borrower's primary industry in order apply the PPP Affiliation Waiver. The Waiver applies to borrowers who are engaged in a business activity assigned Industry Code 72 by NAICS. Appellant meets that standard.

**The Primary Industry standard does not apply.**

13 CFR §121.107 defines how SBA determines a concern's primary industry. It does not define when or why such a determination may be required. Generally, SBA makes a determination of a business concern's primary industry, along with that of its affiliates, in order to determine whether a business is eligible for certain Government contract and procurement programs.[1] Determination of the applicant's primary industry and assignment of an NAICS Code by a procuring agency contracting officer applying §121.107 is required in order for SBA to determine which size standard to apply to a multi-faceted enterprise.

---

[1] 13 CFR §121.101

8

However, nothing in the PPP statute, the regulations, the PPP Rule or SBA Guidance on the subject requires or permits SBA to determine the borrower's primary industry, or to consider the factors listed in §121.107, in order to determine whether the Affiliation Waiver applies. On the contrary, consideration of the factors listed in §121.107 to determine whether an enterprise meets the small business size standard applicable to the industry by virtue of affiliation is specifically precluded by 15 U.S.C.S. §636(a)(36) (D)(iv).

§121.107 does not by its own terms specifically relate or apply to the PPP Loan Program. §121.107 is contained in Part 121, Subchapter A, which contains General Principles of Affiliation[2], and Exceptions to the general affiliation rules that may apply in the absence of a more specific statutory exception. [3] The PPP Affiliation Waiver for Food Service Businesses is a statutory, industry specific exception to the general Part 121 regulatory size standards and affiliation rules. The statute provides:

> Waiver of affiliation rules. During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for—(I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72;

> 15 U.S.C.S. §636(a)(36)(D)(iv)

---

[2]13 CFR §121.103(a)
[3]13 CFR §121.103(b)

13 CFR §121.103 is entitled "How does SBA determine affiliation?" All of the eligibility provisions contained therein are waived by 15 USC §636(a)(36)(D)(iv) for a business concern engaged in a business that is assigned an NAICS class code beginning with 72, including:

> (5) In determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation.

> (6) In determining the concern's size, SBA counts the receipts, employees, or other measure of size of the concern whose size is at issue and all of its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit.

13 C.F.R. §121.103(a)(5)(6)

As noted above 13 CFR §121.107, upon which SBA relies, is located in Part 121 separate from §121.103 "How does SBA determine affiliation". By that organizational fact alone, one may conclude the determination of a concern's primary industry is unrelated to the determination of affiliation. The disconnect between a concern's primary industry and the Affiliation Waiver question is further illustrated by SBA Form 3511, which asks for the applicant's "Primary" NAICS Code in Section III (Borrower Size Standard), but not in Section I (Affiliation Waiver).

Further, §121.107 clearly does not provide a standard for determining affiliation, because for purposes of that section the existence of affiliates is presumed:

> In determining the primary industry in which a concern **or a concern combined with its affiliates** is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets. (emphasis added)

13 C.F.R. § 121.107

If one were to assume for argument's sake that a business concern's primary industry, or the factors that go into that determination under 13 CFR §121.107, are somehow relevant to the determination of affiliation in ordinary (non-PPP) circumstances, those factors are nevertheless among the eligibility provisions that are waived by the PPP statute in determining whether affiliation exists under 13 CFR §121.103. These waived provisions include "totality of the circumstances" and consideration of "receipts, employees, or other measures of size". 13 C.F.R. §121.103(a)(5)(6).

SBA's application of 13 CFR §121.107 to deny the PPP Affiliation Waiver is clear error because it is contrary to the statute, and as shown in the following section, contrary to the Agency's own interpretation of the PPP as reflected in SBA published Guidance on the subject.

**B**. **Appellant is in a food services business with an NAICS code 72**

The issue is the meaning of the phrase "any business concern… that is assigned a NAIC Code beginning with 72", in the CARES Act, 15 U.S.C. §636(a)(36)(D)(iv). The Agency's reliance on 13 CFR §121.107 is clear error[4], because the considerations described in that section are among those waived by the Act, and because this is not an instance where SBA must either make a primary industry determination, or assign an NAICS classification.

According to Census.gov, a business concern may have more than one NAICS Code depending on the variety of its operations. "There is no central government agency with the role of assigning, monitoring or approving NAICS codes for establishments. Different agencies maintain their own lists of business establishments to meet their own programmatic needs."[5]

---

[4]The applicability of 13 CFR §121.107 was a disputed issue of law in the OHA. SBA's contention that "the only issue before OHA is a factual one – whether Appellant satisfied the requisite size standards to be eligible for a PPP Loan", was incorrect

[5]13 C.F.R. 121.402(a), see also census/gov/naics//reference_files/2022_NAICS_Manual, p.75

The purpose for determining a concern's primary industry under 13 CFR §121.107 is for a government contracting officer to assign an NAICS Code to that activity, so as to apply the appropriate SBA size standard in determining the concern's eligibility for small business government procurement contracts or set asides. There is a separate regulatory scheme for appeals of such determinations.[6]

SBA develops and assigns small business size standards to the various NAICS code classifications, but does not "assign" NAICS codes to applicants, except in connection with federal government contracting programs. According to the NAICS Association (NAISCA) website:

> "NAICS is a Self-Assigned System; no one assigns you a NAICS Code. What this means is a company selects the code that best depicts their primary business activity and then uses it when asked for their code. *If your Business Activities include more than one Unique Line of Business, you may want to use more than one NAICS Code*."[7]

Federal agencies allow business concerns and entities to use more than one NAICS code. For instance, SAM (System for Award Management), where businesses register to become federal contractors, will accept up to ten classification codes per establishment. The only instances in which one or more codes cannot be fully self-assigned for official purposes, is in OSHA, EPA, and DEP applications, which assign codes based on environmental factors.

---

[6] 13 CFR §121.402; SBA.gov/About/Oversight and advocacy/OHA//NAICS Appeals

[7] See info@NAICSA.com

Borrowers and lenders may rely on SBA –Treasury document "PPP Loans – FAQ" (7/29/21) @treasury.gov, ("SBA Guidance") as SBA's interpretation of the CARES Act and the PPP Interim Final Rules.[8] The SBA Guidance document provides:

> "SBA's affiliation rules (13 CFR 121.103 and 13 CFR 121.301) do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees (or 300 employees for a Second Draw PPP loan). Example 3. Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees. Company Y is eligible for a First Draw PPP Loan because it has 500 or fewer employees. The affiliation rules do not apply to Company Y, because it has 500 or fewer employees and is in the food services business (with a NAICS code beginning with 72)." (emphasis added).[9]

The SBA Guidance document states unambiguously the affiliation rule is waived for a borrower that is "in the food service business with a NAICS Code beginning with 72". Pertinent to the Agency's argument, SBA Guidance does not state the waiver only applies to a concern whose primary industry is restaurants, or only for a business that has a "primary" NAICS code beginning with 72. As noted in the previous section SBA Form 3511 asks for the applicant's Primary NAICS Code in Section III (Borrower Size Standard), not in Section I which deals specifically with application of the Affiliation Waiver.

---

[8] Insert cite

[9] "PPP Loans – FAQ" (7/29/21) @treasury.gov ("SBA Guidance"), Question 24

Borrower's initial negative response to the NAICS Code 72 question in Section I of SBA Form 3511[10] was based on the inherent implication that only one NAICS Code can apply to Borrower's business, or that an applicant had to be assigned NAICS Code 72 by SBA or the Census Bureau in order to for the Affiliation Waiver to apply. Neither is correct. Borrower amended its SBA Form 3511 to declare that it was engaged in a business that was assigned an industry code beginning with 72 by NAICS.

### C.    The Evidence

In response to SBA's communication of 4/11/22, Borrower provided evidence that shows a substantial part of Borrower's business (>70% of Shop Rite locations, and 72% of its employees)10 are engaged in the preparation and provision of meals, snacks, and beverages for immediate on-premises and off- premises consumption. AR 973. The evidence showed further Shop Rite owns and operates two (2) full service restaurants. *Id.* There is no dispute about the fact that NAICS assigns Code 722513 (limited service cafés, deli and carryout restaurants) to that business.

SBA's determination that NAICS Code 72 does not apply is based on an erroneous summary of the evidence in the administrative record. The Agency's "Affiliate Narrative Worksheet", AR 1595 – 1600 (which is not evidence) states:

> "… the borrower submitted a document indicating the NAICS code for Shop Rite, Inc., should be changed …to 722513 Limited Service Restaurants because it claims that over 70% of the company's *revenues* is engaged in the food service business and operates 2 full service restaurants." [11]

---

[10]"Is Borrower assigned a North American Industry Classification System (NAICS) code beginning with 72 (Accommodation and Food Service Industries)?"

[11]AR 1598

Petitioner did not submit a document that indicated over 70% of its revenue was derived from the food service business. Shop Rite did not make that claim, and did not need to establish that fact, in order for NAICS Code 722513 to apply. By mischaracterizing the evidence, and focusing solely on revenue, the Agency managed to avoid consideration of the fact that a substantial part of Borrower's business (>70% of Shop Rite locations, and 72% of its employees) are engaged in the limited service cafés, deli and carryout restaurants business, in addition to two full service restaurants.

There is no evidence in the record of the Agency giving any other consideration to the question of eligibility for the Affiliation Waiver. The PPP Loan Exception Review Report states "Due diligence shows that Shop Rite does not qualify or meet the criteria for an affiliation rule waiver/exemption"[12], but provides no explanation or basis for that conclusion.

**The Decision**

In the Decision of 18 October 2022 the Administrative Judge agreed with the SBA's conclusion that Appellant does not qualify for the NAIC code 72 Waiver because Shop Rite's primary industry is not food service.

> "Because the Deli provided less than 10% of total income and approximately 2% of cost, SBA's conclusion that Shop Rite is 'Gasoline Stations with Convenience Stores' is correct." [13]

That conclusion is clearly erroneous because as shown in the preceding section neither the CARES Act nor SBA Guidance on the subject require an applicant's primary industry be food service in order for the waiver to apply.

---

[12] AR 1588 l. 6,

[13] AR

The Administrative Judge acknowledged that a company may have more than one NAIC code, that companies are charged with "self-identifying" industry codes that apply to their business, and under the authorities cited by Petitioner, there is no requirement that SBA, applying 13 CFR 121.402(e), necessarily assign the NAICS Code for the component that accounts for the largest share of the business.[14]

The Decision rests upon two legal conclusions that find no support in the CARES Act or the regulations. First, as noted above, nothing in the law, the regulations or SBA Guidance state the Waiver only applies to Borrowers whose primary industry is food service.

Second, the conclusion that SBA is empowered by Congress or by regulation to "…. clarify, complete, or supply a NAICS code designation" for purposes of the CARES Act or the PPP Affiliation Waiver, is erroneous.

Congress gave the Administrator authority to specify which size standards (number of employees, dollar volume, net worth, net income, or combination thereof) apply to businesses within different industry classifications, in order to determine whether the business is a small business concern for purposes of the Act.[15] Size standards assigned to different industries by SBA are identified by NAICS codes.[16]

15 U.S.C 632(a)(2)(A) authorizes the Administrator to decide which size standard applies to a particular industry classification, it does not expressly or implicitly give the Administrator authority to assign NAICS classifications to a particular business, either generally or for purposes of the CARES Act PPP Affiliation Waiver in particular.

---

[14] AR
[15] 15 U.S.C. § 632(a)(2)(A)
[16] 13 CFR §121.201

The Decision cites 13 CFR 121.402(e) as regulatory authority for the Administrator's power to determine Appellant's NAICS classification for purposes of the Affiliation Waiver. §121.402 is contained in Part 121 SBA Size Regulations, Subpart A, Size Eligibility for Government Procurement. §121.401 specifies which procurement programs are subject to size determinations and the rules set forth in §§121.401 through 121.413:

> The rules set forth in §§ 121.401 through 121.413 apply to all Federal procurement programs for which status as a small business is required or advantageous, including the small business set-aside program, SBA's Certificate of Competency program, SBA's 8(a) Business Development program, SBA's HUBZone program, the Women Owned Small Business (WOSB) Federal Contract Program, SBA's Service-Disabled Veteran-Owned Small Business program, the Small Business Subcontracting program, and the Federal Small Disadvantaged Business (SDB) program.[17]

13 CFR §121.402(e), upon which the Administrator's authority rests in this case, does not apply because it is contained in the section that deals with Size Standards Applicable to Federal Government Contracting programs. Under 13 CFR §101.402(e), in order for the Administrator to have authority to "… clarify, complete, or supply a NAICS code designation" there must be (i) a federal government contract program solicitation, that (ii) identifies the single NAICS code that best describes the principal purpose of the product or service being acquired, (iii) designated by the procuring agency contracting officer, or authorized representative.[18]

NAICS code designations by procuring agency contracting officers are binding on the parties, and are appealable.[19] Opinions otherwise provided by SBA officials (*e.g.*, by someone in Office of Financial Programs) are advisory in nature, and are not binding.[20]

---

[17] 13 C.F.R. § 121.401
[18] 13 C.F.R. § 121.402(b).
[19] 13 C.F.R. § 121.403.
[20] *Id.*

In sum, 13 CFR §121.402(e) does not authorize the SBA Administrator or OFP to "clarify" or assign a primary industry NAICS code to deny a PPP Affiliation Waiver, because such cases do not arise under Part 121 Subpart A, Size Eligibility for Government Procurement, and do not require a primary NAICS code designation by a procuring agency contracting officer.

Alternatively, if the government procurement regulations could be borrowed or applied by analogy to the PPP Affiliation Waiver issue (which is denied), the result would not compel a finding of disqualification under the "primary industry" theory. In the case of Multiple Award Contracts, 13 CFR §101.402(c), a contracting officer may assign a single "primary" NAICS code that best describes the principal purpose of the acquisition, only if that NAICS code also best describes the principal purpose of each order to be placed under the Contract. 11.

In other cases, such as (by analogy) a PPP Loan to a multi-faceted business such as Shop Rite, Inc., which involves both gas stations/convenience store operations, and limited service take out restaurants at more than 70% of its locations and involving more than 70% of its employees, plus two full service restaurants, the contracting officer will divide the solicitation into discrete separate categories, such as Business Sectors and Functional Areas (FAs), or the equivalent, and assign each discrete category the single NAICS code and corresponding size standard that best describes the principal purpose of the goods or services to be acquired under that category.[21]

The point being, if 13 CFR §121.402(e) could be applied by analogy to the Affiliation Waiver determination in this case, the result would not compel a finding of disqualification for the Affiliation Waiver under the "single NAICS primary industry" theory. On the contrary, assigning multiple NAICS codes as permitted by 13 CFR §121.402(c) is appropriate in the case of a business that utilizes a PPP loan in connection with a multi-faceted operation that includes restaurants in

---

[21] 13 CFR §101.402(c)

conjunction with other products and services (convenience stores and gasoline sales) at most of its locations, and involving most of its employees, is much more in line with SBA Guidance that provides the Affiliation Waiver applies if the borrower in the restaurant business

**Summary**

Congress gave the SBA Administrator authority to assign size standards to business in the various NAICS industry classifications. 15 U.S.C. 632(a)(2)(A) does not give the Administrator authority to assign NAICS codes to a particular business. Neither the CARES Act nor SBA Guidance on the subject require an applicant's primary industry be food service in order for the PPP Affiliation Waiver to apply. 13 CFR §121.402(e) does not give the Administrator authority to assign an NAICS code to Appellant in this case because the regulation pertains only to federal government contracting programs. The Decision contains no authoritative basis for copying and pasting government procurement regulations into the PPP scheme, or for allowing an administrative agency decision to preempt congressional intent as set out in the CARES Act affiliation waiver.

**Common Ownership**

In the OHA, SBA acknowledged Tobacco Plus, Inc., Shop Rite, Inc., and Acadia Wholesale & Tobacco Co., Inc. are majority owned by three different voting trusts. The Agency argued:

> "All three (trusts) are listed as 100% owned by Peggy Angelle Gielen", which would affiliate these 3 companies together. 13 CFR 121.301(f)(4)."

SBA Response, p. 3[22]

The Agency cited AR 442-483 as evidence to support that conclusion. The referenced pages contain Appellant's 11/5/21 correspondence to Lender which included Beneficial

---

[22] AR

Ownership Lists and documentation that showed Peggy A. Gielen was the holder of trust certificates evidencing Mrs. Gielen's co-beneficial interest in shares owned by the three Trusts.[23] That evidence does not show common ownership of the three entities, because ownership of a trust certificate evidencing a beneficial interest in shares owned by the trust, is not the legal or functional equivalent of ownership of shares in the company.[24] The three entities were majority owned by three different voting trusts, which are legal entities distinct from each other.[25]

### Identity of Interest

That Mrs. Gielen was the holder of trust certificates evidencing a co-beneficial interest in shares owned by separate voting trusts does not establish affiliation between the companies based on identity of interest, as defined by 13 CFR 121.301(f)(4):

> Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

---

[23] AR 454 – 461. The Agency conceded Mrs. Gielen's trust certificates gave her the right to potential dividends or distributions, but not to management or control of the entities.

[24] In Louisiana law, the holders of units of proprietary interests in a corporation ("Shareholders), include record shareholders (persons in whose name shares are registered in the records of the corporation), or persons on whose behalf shares are registered in the name of an intermediary or nominee, *i.e.* persons who have the right pursuant to a procedure established by the board of directors to be treated by the corporation as record shareholders. That definition does not include a beneficial interest holder. La. R.S. § 12:1-140.

[25] For determining affiliation based on ownership a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.13 C.F.R. § 121.301(f)(1). The owners of 20% or more of the equity of Shop Rite, Inc., were Mary Ann Stefanski (21%) and Shop Rite, Inc. Voting Trust (58.85%). Shop Rite Inc. Voting Trust, Mrs. Gielen, and Ms. Stefanski are not shareholders in Tobacco Plus or Acadia Wholesale. Appellant's initial loan application stating Mrs. Gielen owned 33% of Shop Rite and 47% of Tobacco Plus and Acadia Wholesale, was not correct. AR ___, SRI response d. 9/29/21.

On February 24, 2022 SBA advised Appellant the Agency had an "understanding of an affiliation... through **familial ties** and/or **common management** through an individual (Peggy A. Gielen) either as co-owner, co-beneficial owner of the respective voting trusts, or co-member."

Identity of interest affiliation means a relationship between companies where one is "operated" (owned or controlled) by a person who is a close relative (spouse, parent, child, or sibling) of a person who owns or controls the other entity. Under the regulatory definition there could be affiliation by virtue of identity of interest (familial ties) through Peggy Gielen, as a co-beneficial owner of shares held by the Shop Rite, Inc. Voting Trust, only if a child or sibling of Mrs. Gielen (or spouse of any such child or sibling) owned or controlled another concern in the same or similar industry in the same geographic area.

Borrower provided information to SBA that showed [PG]'s interests in the listed entities on the Date of Loan Application.[26]17 The evidence shows neither [PG], nor children or siblings of the named individual nor their spouses owned individually or in the aggregate 20% or more of the equity in a listed entity, except for Rice City Storage, LLC, and J.D. Gielen & Family, LLC.[27]

### Common Management or Control

SBA's "understanding of affiliation" through Mrs. Gielen as a co-beneficial owner of voting trust shares by virtue of common management, is likewise incorrect. The evidence Borrower provided to the Agency showed PG's interests as a co-beneficial owner of Voting Trust Shares did not translate into control of Borrower or any other listed entity. The interest included

---

[26]Rice City Storage AR 447-448; Tobacco Plus AR 454-455; Shop Rite 457-458; Acadia Wholesale AR 460 -461.

[27]Id.

the right to receive distributions or dividends (if any) declared, but did not include the right to vote the shares or otherwise participate in management of Borrower, or of any other listed entity.[28]

SBA argued in the alternative Shop Rite is affiliated with Tobacco Plus and Acadia Wholesale by identity of interest under 13 CFR 121.301(f)(4), through Mrs. Gielen as a co-beneficial owner of voting trust shares, because "the entities are controlled by close members of the Gielen family".[29] The argument does not apply because the person allegedly in control of the entities is not a "close relative" as defined by 13 CFR 120.10.[30] Appellant showed further each of the listed entities are separate businesses, operated independently of each other, with separate employees, separate payrolls, and separate and independent operational management groups headed by Directors of Operation with no ties to any other listed entity. [31]

### Shop Rite Does Not Exceed the Maximum Number of Employees

The Decision states:

> In the SBA's final argument, it states that Shop Rite on its own exceeds the maximum number of employees. Specifically arguing, "even if Shop Rite were not found to be affiliated with these entities, Shop Rite on its own exceeds the maximum allowable number of employees. Appellant's 2019 IRS Forms 941 show Appellant had over 500 employees during each quarter of 2019. (Dkt. Appeal Ex. B) Appellant's 2019 wage and payroll reports also show over 500 employees for each quarter. (Dkt. Appeal Ex. C) Appellant has failed to show SBA made an error in determining that Appellant exceeds the size standards to be eligible for a PPP loan.[32]

---

[28]AR 965, AR 1488-89.

[29] SBA Reply, p. 8; AR

[30]Cody Gielen is Mrs. Gielen's grandson. Close Relative is defined as a spouse, a parent, or a child or sibling, or the spouse of any such person. 13 C.F.R. § 120.10

[31]AR 417.  None of the entities listed as potential affiliates owns or has the power to control more than 50 percent of Shop Rite, Inc.'s voting shares, its Board of Directors or executive management. Likewise, Borrower does not own or have the power to control more than 50 percent of the shares or interests of any listed entity, nor the power to control the directors or managers of any of those concerns. AR 969-971, AR 415 and attachments.

[32] AR

The Decision should be reversed because (a) this issue was not raised in SBA's initial determination, and (b) SBA misapplied 13 C.F.R. § 121.106(b): in determining a concern's number of employees,

> "… (1) The *average number of employees* of the concern is used…based upon numbers of employees for each of the pay periods for the preceding completed 24 calendar months. (2) Part-time and temporary employees are counted the same as full-time employees."

A borrower's IRS Form 941 does not reflect the average number of employees of the concern based on numbers of employees for each of the pay periods for the preceding completed twenty four calendar months. Form 941 instructs the employer to state the number of employees on payroll for the four (4) pay periods that include (i) March 12 for Q1, (ii) June 12 for Q2, (iii) September 12 for Q3, and (iv) December 12 for Q4.[33] Appellant's quarterly state wage reports reflect the total number of employees employed at any time during the quarter, if only for one day.[34] Neither the 941 total nor the state quarterly wage report total reflect the average number of employees for each of the pay periods in that year, or the twenty four preceding calendar months.

Appellant submitted the number of employees stated in the application (473) more accurately represents the estimated average number of employees in each of the pay periods during reporting period, as called for by the regulation.

**Conclusion**

Under SBA's interpretation of the Interim Final Rule, the Affiliation Waiver applies if the applicant "….is in a food service business with an NAICS Code beginning with 72". There is no requirement that food service be the applicant's primary business activity, or that an applicant be assigned NAICS Code 72 by SBA in order to for the Affiliation Waiver to apply. The Agency committed clear legal error by applying eligibility provisions that are waived by the PPP statute,

---

[33] AR. 397
[34] AR. 155

and by mischaracterizing the evidence and failing to consider facts that showed the Affiliation Waiver applies. 17

The evidence in the Administrative Record does not establish affiliation by virtue of common ownership, management or identity of interest, as defined in the regulations. Shop Rite standing alone is eligible under the employee size standard because the average number of employees of the concern in each of the pay periods in the reporting period was less than 500.

WHEREFORE Petitioner prays that after due proceedings herein the Court reverse the final decision by SBA that declared Petitioner in eligible for a Paycheck Protection Program (PPP) loan and/or for loan forgiveness under the provisions of Section 1102 of the Coronavirus Aid Relief, and Economic Security (CARES) Act.

RESPECTFULLY SUBMITTED,

By: /s/ Christopher Zaunbrecher

_____
CHRISTOPHER L. ZAUNBRECHER (09546)
BRINEY FORET CORRY, LLP
413 Travis Street, Suite 200
Post Office Drawer 51367
Lafayette, Louisiana 70505-1367
Telephone: (337) 456-9835
Facsimile: (337) 233-8719
E-mail: clzaunbrecher@brineyforet.com
Attorney for Petitioner

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been presented to all

counsel via:

| | | | |
|---|---|---|---|
| ( ) | Hand Delivery | ( ) | Prepaid U.S. Mail |
| ( ) | Facsimile | ( ) | Certified Mail |
| (X) | E-Mail | ( ) | Federal Express |

Lafayette, Louisiana this 29th day of December, 2023.

/s/ Christopher L. Zaunbrecher

_____

CHRISTOPHER L. ZAUNBRECHER (09546)