UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**SHOP RITE INC**

**VERSUS**

**U.S. SMALL BUSINESS ADMINISTRATION**

**CASE NO. 6:23-CV-00456**

**JUDGE ROBERT R. SUMMERHAYS**

**MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING AND ORDER

The present matters before the Court are cross motions for summary judgment filed by the plaintiff, Shop Rite, Inc. [ECF No. 25], and the defendant, the United States Small Business Administration [ECF No. 33]. Both motions are opposed.

### I.
### BACKGROUND

Shop Rite, Inc. ("Shop Rite") challenges the decision of the United States Small Business Administration (the "SBA") denying its application to forgive loans advanced to Shop Rite under the Paycheck Protection Program ("PPP") created by the Coronavirus Aid, Relief, and Economic Security Act of 2020 (the "CARES Act" or "the Act"). Under Section 7(a) of the Small Business Act, codified at 15 U.S.C. § 636(a), the SBA is authorized to make business loans to eligible small business concerns.[1] SBA regulations establish the eligibility requirements for SBA small business loans, including size, location, and demonstrated need for credit.[2] These regulations set "size standards" that "define whether a business entity is small and, thus, eligible for Government

---

[1] ECF Nos. 24-2 at 3-6; 35-2 at 1-10.
[2] 13 C.F.R. § 120.101.

1

programs and preferences reserved for 'small business' concerns."[3] These size standards turn, in part, on the industry in which a borrower operates.[4] The SBA classifies industries using the North American Industry Classification System ("NAICS"), which assigns codes to various categories of economic activity.[5] The SBA then sets size limits for the maximum revenue or number of employees to qualify as an eligible "small business" by NAICS code.[6] The employee size limit ranges from 125 to 1,500 employees, depending on the NAICS category.[7] The regulations place businesses in the relevant NAICS category based on the borrower's "primary industry":

> In determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.[8]

The SBA's regulations also include "affiliation" rules governing when related business are grouped together for purposes of applying the size limits.[9]

In 2020, Congress passed, and the President signed, the CARES Act which, *inter alia*, created the PPP.[10] The CARES Act directed the SBA to administer the PPP under the agency's pre-existing Section 7(a) small business loan program, and provided that PPP loans could be forgiven if used for certain authorized purposes.[11] In this regard, the CARES Act states that "[e]xcept as otherwise provided in [the PPP], the [SBA] may guarantee covered loans *under the*

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] 13 C.F.R. § 121.201.
[7] *Id.*
[8] 13 C.F.R. § 121.107.
[9] 13 C.F.R. § 121.103.
[10] CARES Act, Pub. L. No. 116-136, 134 Stat. 281. The PPP is codified at 15 U.S.C. § 636(a)(36).
[11] *Id.*

*same terms, conditions, and processes* as a loan made under this subsection [Section 7(a)]."[12] The CARES Act expanded eligibility for PPP loans in certain respects compared to traditional Section 7(a) loans.[13] One of the areas where the CARES Act expanded eligibility for PPP loans is relevant here—the waiver of the affiliation rules for restaurant and hospitality businesses.[14] Specifically, the CARES Act provides that:

> [d]uring the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for— (I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72....[15]

NAICS codes beginning with "72" include hotels and motels, casino hotels, bed and breakfast inns, and other similar types of hospitality businesses.[16] The category also includes full and limited-service restaurants, caterers, "drinking places," snack and nonalcoholic beverage bars, and other food service-related businesses.[17]

The CARES Act directed the SBA to promulgate regulations implementing the PPP within fifteen (15) days of enactment, "without regard to the notice requirements under section 553(b) of [T]itle 5, United States Code."[18] On April 15, 2020, the SBA issued an Interim Final Rule ("First IFR"), which Plaintiffs refer to as the "Exclusion Rule," detailing the SBA's interpretation of the PPP provisions in the CARES Act and how the SBA would administer the new program.[19] The

---

[12] CARES Act, 134 Stat. 287; 15 U.S.C. § 636(a)(36)(B) (emphasis added).
[13] 15 U.S.C. § 636(a)(36)(D).
[14] 15 U.S.C. § 636(a)(36)(D)(iv).
[15] 15 U.S.C. § 636(a)(36)(D)(iv)(I).
[16] 13 C.F.R. §121.201.
[17] *Id.*
[18] CARES Act, Sec. 1114, 134 Stat. at 312; 15 U.S.C. § 9012.
[19] Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20811-01.

First IFR stated that the PPP is a "new [Section] 7(a) program."[20] The First IFR declared SBA's understanding that "[t]he intent of the [CARES] Act is that SBA provide relief to America's small businesses expeditiously … by giving all lenders delegated authority and streamlining the requirements of the regular [Section] 7(a) loan program."[21] As part of that "streamlining," the First IFR stated that businesses identified in Section 120.110 as ineligible for traditional Section 7(a) loans were *also* not eligible for PPP loans, "except that nonprofit organizations authorized under the [CARES] Act are eligible."[22]

On April 3, 2020, Shop Rite applied for a PPP loan with the First National Bank of Louisiana ("FNB") and, on April 15, 2020, the bank approved the loan and disbursed $2,502,750 to Shop Rite.[23] Shop Rite filed an application for PPP loan forgiveness on June 23, 2021, and FNB recommended that the loan be forgiven.[24] Shop Rite's initial application for forgiveness included an SBA Form 3508 EZ prepared by Shop Rite indicating that its NAICS code was 447110, which is the code for "Gasoline Stations with Convenience Stores."[25] In August 2021, the SBA informed FNB that it was reviewing Shop Rite's eligibility under the PPP program and requested information and documents from Shop Rite pertaining to the number of persons it employs, its affiliates, and its revenues to determine whether Shop Rite satisfies the SBA's size requirements for participation in the PPP program.[26] The SBA issued its final loan review decision in June 2022, finding that Shop Rite was not eligible for the PPP loan it received and, accordingly, was not

---

[20] *Id.* at III(1).
[21] *Id.*
[22] *Id.* at III(2)(c).
[23] ECF No. 24-9 at 1476-77.
[24] *Id.* at 1481-83.
[25] *Id.* at 9.
[26] ECF No. 24-7 at 1455-56.

eligible for forgiveness of the loan.[27] The SBA determined that Shop Rite exceeded the 500–employee eligibility limit when the total number of employees of Shop Rite and its affiliates were considered. Specifically, the SBA found that the Shop Rite and its affiliates employed a total of approximately 896 individuals.[28]

Shop Rite timely appealed the SBA's loan review decision to the Office of Hearings and Appeals ("OHA"), arguing that the SBA clearly erred in its affiliation findings and that Shop Rite was eligible for the affiliation waiver under 15 U.S.C. § 636(a)(36)(D)(iv)(I).[29] Shop Rite argued before the OHA that substantial parts of its business—over 70% of its locations and 72% of its employees—"are engaged in the preparation and provision of meals, snacks, and beverages for immediate on-premises and off-premises consumption."[30] Shop Rite argued that the NAICS code applicable to "limited-service restaurants" (722513) applies to this aspect of its business and, therefore, Shop Rite qualifies for the affiliation waiver for borrowers engaged in a business that falls under a "72" series NAICS code.[31] The Administrative Law Judge ("ALJ") rejected Shop Rite's argument, concluding that Shop Rite's "primary industry" is "gasoline stations with convenience stores," which is covered under NAICS code 447110.[32] In this regard, the ALJ noted that "[r]eview of profit / loss statements and past three (3) years of financial records, clearly shows that [Shop Rite's] deli provided less than ten (10) percent of total income to the company and approximately two (2) percent of cost of running the business."[33] Accordingly, the ALJ affirmed

---

[27] Id. at 5, 17-20, 22-23, 1588-1601.
[28] Administrative Record, ECF No. 24-9 at 4.
[29] Administrative Record, ECF No. 24-1.
[30] Administrative Record, ECF No. 24-10 at 17.
[31] Id.
[32] Id. at 18.
[33] Id. at 18.

the SBA's final loan decision rejecting Shop Rite's application for forgiveness. Shop Rite filed the

present action seeking judicial review of the SBA's decision.[34]

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part

of each claim or defense–on which summary judgment is sought."[35] "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."[36] "A genuine issue of material fact exists

when the evidence is such that a reasonable [factfinder] could return a verdict for the non-moving

party."[37] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of
> demonstrating the absence of an issue of material fact with respect to those issues
> on which the movant bears the burden of proof at trial. However, where the non-
> movant bears the burden of proof at trial, the movant may merely point to an
> absence of evidence, thus shifting to the non-movant the burden of demonstrating
> by competent summary judgment proof that there is an issue of material fact
> warranting trial.[38]

When reviewing evidence in connection with a motion for summary judgment, "the court must

disregard all evidence favorable to the moving party that the jury is not required to believe, and

should give credence to the evidence favoring the nonmoving party as well as that evidence

supporting the moving party that is uncontradicted and unimpeached."[39] "Credibility

---

[34] *Id.*
[35] Fed. R. Civ. P. 56(a).
[36] *Id.*
[37] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[38] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[39] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

determinations are not part of the summary judgment analysis."[40] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[41]

## II.
### DISCUSSION

### A. The Standards For Judicial Review of the SBA's Action.

The APA provides that a "reviewing court shall ... hold unlawful and set aside agency action ... found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory Rite."[42] Until the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*,[43] courts generally applied the two-step *Chevron* framework in determining whether an agency's action exceeded its statutory authority.[44] Under this framework, courts were required to first exhaust the traditional tools of statutory construction to determine whether "Congress has directly spoken to the precise question at issue;" if it has, the court's inquiry ended and the court had to "give effect to the unambiguously expressed intent of Congress."[45] If the statute was silent or ambiguous as to the legality of the agency's action, a court would proceed to step two of the *Chevron* framework and determine whether the agency's action was "based on a permissible

---

[40] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[41] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[42] 5 U.S.C. § 706(2); *Texas v. United States*, 809 F.3d 134, 178 (5th Cir. 2015).
[43] ___ U.S.___, 144 S. Ct. 2244, 2261–63 (2024)
[44] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984); *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 433–34 (5th Cir. 2021).
[45] *Chevron*, 467 U.S. at 842–43.

construction of the statute."[46] "If a statute is ambiguous, and if the implementing agency's construction [of the statute] is reasonable," a court would generally defer to the agency's interpretation of the statute.[47]

The Supreme Court overruled *Chevron* in *Loper Bright Enter.*[48] Now, when an agency's interpretation of statute is challenged, the agency is not entitled to deference even when a statute is ambiguous.[49] Rather, the APA requires courts to "exercise independent judgment in determining the meaning of statutory provisions."[50] Courts may consider an agency's interpretation as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance,"[51] especially when the interpretation "rests on factual premises within the agency's expertise."[52] But an agency's interpretation of a statute cannot supplant the role of the judiciary as the final arbiter of a statute's meaning.[53] Courts might also consider "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time," when determining the statute's meaning.[54]

Statutes may authorize an agency to exercise discretion, and that discretion could take many forms—including the authority to define a statutory term that Congress chose not to elucidate,[55] the authority to "fill up the details" of a statutory scheme,[56] or merely the authority to

---

[46] *Alenco*, 201 F.3d at 619 (quoting *Chevron*, 467 U.S. at 843).
[47] *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 (5th Cir. 2018).
[48] *Loper BRite Enter.*, 144 S. Ct. at 2261–63.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 2259.
[52] *Id.* at 2267 (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98, n. 8 (1983)).
[53] *Id.*
[54] *Id.* at 2262.
[55] *Id.* at 2263 (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977)).
[56] *Id.* (quoting *Wayman v. Southard*, 10 Wheat. 1, 43, 6 L.Ed. 253 (1825)).

regulate within the clear limits of statute in a manner that is "appropriate" or "reasonable."[57] When statute delegates authority to an agency, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits" by "recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decision-making within those boundaries."[58]

Under the APA, courts must set aside "agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[59] Agency action does not violate this standard so long as it is "reasonable and reasonably explained," in other words, so long as the agency "has acted within a zone of reasonableness and, in particular, that the agency has reasonably considered the relevant issues and reasonably explained the decision."[60] To act reasonably, the agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[61] Reasoning that "fails to account for relevant factors or evinces a clear error of judgment" must be set aside.[62] In general, an agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that either runs counter

---

[57] *Id.*

[58] *Id.* (internal quotations, citations, and brackets omitted).

[59] 5 U.S.C. § 706(2)(A).

[60] *BNSF Ry. Co. v. Fed. R.R. Admin.*, 62 F.4th 905, 910 (5th Cir. 2023) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, 141 S. Ct. 1150, 1158, 209 L.Ed.2d 287 (2021)).

[61] *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983))(internal quotations omitted).

[62] *Id.* (quoting *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 985 F.3d 472, 475 (5th Cir. 2021))(internal quotations omitted).

to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[63] The reasoning on which an action was based must be articulated by the agency at the time the decision was made, and not developed after the fact.[64] The reasoning need not be perfectly clear, but it is sufficient so long as "the agency's path may reasonably be discerned."[65]

### B. The "Primary Industry" Rule and the Applicability of the Affiliation Waiver.

Shop Rite first challenges the SBA's ruling that it is not eligible for the "affiliation waiver" in 15 U.S.C. § 636(a)(36)(D)(iv)(I). Shop Rite argues that the SBA's use of a "primary industry" test to assign a single NAICS code to a borrower for purposes of determining whether the waiver applies is inconsistent with the text of section 636(a)(36)(D)(iv)(I).[66] According to Shop Rite, a borrower who is involved in any business activities that could be classified under an NAICS code beginning with "72" is eligible for the affiliation waiver, even if those activities are not a primary part of its business. Shop Rite argues that the SBA's determination otherwise violates the CARES Act. Alternatively, Shop Rite argues that the SBA's decision that it does not qualify for the affiliation waiver is arbitrary and capricious.[67]

### 1. Statutory Authority.

The Section 7(a) program makes SBA business loans available to eligible small business concerns. The statute governing the Section 7(a) program is silent as to the methodology for determining the size eligibility for loans under the program. Accordingly, Congress empowered

---

[63] *Id.* (quoting *State Farm*, 463 U.S. at 43).
[64] *Id.* (quoting *Texas v. United States*, 40 F.4th 205, 226-27 (5th Cir. 2022)).
[65] *Id.* (quoting *State Farm*, 463 U.S. at 43).
[66] ECF No. 25-1 at 4.
[67] *Id.* at 4-5.

the SBA to establish rules and regulations governing the Section 7(a) small business loan program.[68] Based on that authority, the SBA adopted rules and regulations governing the program, including the long-standing eligibility requirements for Section 7(a) loans.[69] Sub-part A of 13 C.F.R. part 121 forms part of those eligibility regulations. These provisions set forth the SBA's size eligibility regulations for the Section 7(a) small business loan program. Section 121.101 explains that the SBA's size standards are based on the "types of economic activity, or industry, generally under the [NAICS]."[70] Under these provisions, the SBA determines a borrower's "primary industry" based on section 121.107:

> In determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.[71]

Section 121.201 provides a table of small business size standards matched to NAICS industry codes.[72] Accordingly, under the SBA's regulations, the applicable eligibility limit for a borrower under the Section 7(a) loan program is determined by a single NAICS code that reflects a borrower's primary business.[73]

---

[68] 15 U.S.C. §§ 633(d), 634(b)(6), 634(b)(7).
[69] *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020).
[70] 13 C.F.R. § 121.101.
[71] 13 C.F.R. § 121.107.
[72] 13 C.F.R. § 121.201.
[73] 13 C.F.R. § 121.301. This provision states:

  (a)  For Business Loans (other than for 7(a) Business Loans) and for Disaster Loans (other than physical disaster loans), an applicant business concern must satisfy two criteria:

  (1)  The size of the applicant alone (without affiliates) must not exceed the size standard designated for the *industry in which the applicant is primarily engaged*; and

Instead of creating an entirely new loan program, the CARES Act placed the PPP loan program under the pre-existing Section 7(a) loan program. The Cares Act provides that the SBA may guarantee PPP loans "under the same *terms, conditions, and processes*" as a loan made under Section 7(a) "[e]xcept as otherwise provided."[74] Those "terms, conditions, and processes" governing the Section 7(a) program include the SBA's methodology for assigning an NAICS code based on a borrower's primary industry. Shop Rite, however, argues that the affiliation waiver provision in section 636(a)(36)(D)(iv)(I) alters these eligibility rules. Shop Rite essentially argues that, under section 636(a)(36)(D)(iv)(I), if a business concern has less than 500 employees on a stand-alone basis—without considering affiliates—and can point to some part of its business that qualifies as "food service" under one of the "72" series of NACIS codes, it is entitled to the waiver even if that food service business is only a small part of its operations.[75] Put another way, according to Shop Rite, its business activities may fall under multiple NAICS codes and any discrete activities that involve food service entitle it claim the affiliation waiver. Accordingly, Shop Rite argues that the SBA violated section 636(a)(36)(D)(iv)(I) by relying on 13 C.F.R. § 121.107 to

---

(2)  The size of the applicant combined with its affiliates must not exceed the size standard designated for either **the primary industry** of the applicant alone or **the primary industry** of the applicant and its affiliates, which ever is higher. These size standards are set forth in § 121.201.

(b)  For 7(a) Business Loans and Development Company programs, an applicant business concern must meet one of the following standards:

(1)  **The same standards applicable under paragraph (a) of this section**; or

(2)  Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million."

Shop Rite does not argue that it meets the definition of a small business concern given in section 121.301(b)(2).
[74] 15 U.S.C. § 636(a)(36)(B)(emphasis added).
[75] ECF No. 30 at 8-12.

12

assign Shop Rite a single NAICS code corresponding to a "primary industry" that is not eligible for the affiliation waiver.[76]

The Court first turns to the text of the statute. Section 636(a)(36)(D)(iv)(I) states that it applies to "any business concern with not more than 500 employees that … is assigned a North American Industry Classification System code beginning with 72." This text does not detail how the SBA is to apply the 500-employee size standard or how the SBA is to assign the applicable NAICS code to a borrower. Nor does the statute expressly displace the "primary industry" methodology of 13 C.F.R. § 121.107 for purposes of the waiver, or otherwise state that a borrower may be assigned multiple NAICS codes. Given this statutory silence, the SBA relied on its 13 C.F.R. Part 121 regulations governing eligibility under the Section 7(a) loan program to determine that Shop Rite was not eligible for the waiver.

The SBA's approach here is consistent with statute. The CARES Act states that the PPP loan program may be administered according to the same "terms, conditions, and processes" as the Section 7(a) loan program.  Under the pre-existing "terms, conditions, and processes" of the Section 7(a) loan program, the SBA determines a borrower's NAICS code based on its primary industry, and this NAICS code determines which size limit applies for purposes of eligibility. Using this methodology to determine eligibility for the affiliation waiver is consistent with the statute because the waiver is framed in terms of a size limit (500 employees) and the assignment of an NAICS industry code (a code beginning with "72"). Because Congress expressly legislated against the backdrop of an existing statutory and regulatory scheme, it may be presumed that

---

[76] *Id.*

Congress was aware of the pre-existing rules and regulations of the Section 7(a) program—including the eligibility regulations in Sub-part A of 13 C.F.R. part 121—when it placed the PPP under Section 7(a).[77] Congress expressly referenced the SBA's affiliation regulation—13 C.F.R. 121—in the text of section 636(a)(36)(D)(iv)(I). Congress did not, however, reference or alter the remaining eligibility rules in Sub-part A of 13 C.F.R. part 121. In short, the SBA did not violate section 636(a)(36)(D)(iv)(I) by using 13 C.F.R. § 121.107 to determine that Shop Rite's "primary industry" did not fall under an NAICS code beginning with "72."

Shop Rite makes two additional arguments supporting its position that the SBA's decision violates the CARES Act. First, Shop Rite appears to argue that the SBA erroneously applied the "primary industry" methodology for determining the applicable NAICS code for purposes of the affiliation waiver "by analogy" from the SBA's rules governing small business procurement and contracting."[78] The Court disagrees. Shop Rite is correct that SBA's regulations do not address how to determine eligibility for the affiliation waiver; nor does section 636(a)(36)(D)(iv)(I). But the SBA's pre-existing Section 7(a) regulations do address how to determine eligibility under the Section 7(a) program in general, and the CARES Act expressly provided that the SBA could rely on these pre-existing rules. Contrary to Shop Rite's argument, these Section 7(a) rules are not limited to procurement and contracting programs but are included under the caption "Provisions of General Applicability."[79]

Shop Rite next argues that 13 C.F.R. § 121.402 allows it to use multiple NAICS codes to describe various aspects of its business and thus does not limit eligibility for the affiliation waiver

---

[77] *Pharaohs GC, Inc. v. United States Small Bus. Admin*, 990 F.3d 217, 227 (2d Cir. 2021).
[78] ECF No. 30 at 12.
[79] 13 C.F.R. Part 121, Subpart A (subcaption stating "Provisions of General Applicability").

to a single NAICS code for its primary industry.[80] This argument is also without merit. Section 121.402 falls under a set of SBA regulations governing the "Size Eligibility Requirements for Government Procurement" and not the Section 7(a) loan program.[81] Section 121.402, in particular, allows for the assignment of multiple NAICS industry codes for multiple award contracts, but not Section 7(a) loans.[82] The CARES Act provides that the PPP loan program is to be administered under the Section 7(a) loan program, not the SBA's procurement and contracting program.

In sum, the SBA did not violate section 636(a)(36)(D)(iv)(I) by using 13 C.F.R. § 121.107 to determine that Shop Rite's "primary industry" did not fall under the NAICS code beginning with "72." The Court, therefore, grants summary judgment with respect to Shop Rite's claim that the SBA violated the CARES Act.

### 2. Was the SBA's Application of the "Primary Industry" Test Arbitrary and Capricious?

Shop Rite next argues that the SBA's affiliation waiver determination is arbitrary and capricious. To the extent that Shop Rite argues that the SBA's determination is arbitrary and capricious based on its statutory arguments that the SBA violated the CARES Act by relying on the "primary industry" test in its pre-existing Section 7(a) eligibility regulations, the Court concludes that Shop Rite's arguments fail for the same reasons explained above. Shop Rite, however, appears to further argue that the administrative record does not support the SBA's conclusion that Shop Rite's "primary industry" does not fall under one of the NAICS codes beginning with "72." Shop Rite contends that it submitted evidence that greater than "70% of Shop

---

[80] ECF No. 30 at 12.
[81] 13 C.F.R. § 401 (caption preceding text stating "Size Eligibility Requirements for Government Procurement").
[82] 13 C.F.R. § 121.401.

Rite locations, and [greater than] 72% of its employees are engaged in the preparation and provision of meals, snacks, and beverages for immediate on-premises and off-premises consumption."[83] Shop Rite also contends that it submitted evidence that it "also owns and operates two full – service restaurants."[84] Shop Rite argues that this evidence supports a finding that its "primary industry" falls under the one of the NAICS codes beginning with "72" that cover the food service industry.[85]

The SBA, however, points to evidence in the record showing that "the bulk of Plaintiff's income and costs of doing business are related to the sale of gasoline, cigarettes, and gaming, rather than to its deli business."[86] The SBA points to Shop Rite's "statements of financial condition" for 2017 through 2019, which show that Shop Rite received $81,909,708 and income from the sale of fuel and that the costs associated with its fuel sales was $74,176,557.[87] In contrast, Shop Rite "received $13,893,477 and income from cigarette sales, $22,597,338 in gaming revenue, and only $8,607,236 from deli sales."[88] The costs associated with Shop Rite's deli sales over that period totaled $3,675,244.[89]

13 C.F.R. § 121.107 states that, in "determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which the business operations occurred for the most recently completed fiscal year." The SBA defines "receipts" as

---

[83] ECF No. 25-2 at 5.
[84] *Id.*
[85] *Id.*
[86] ECF No. 33-1 at 10-11.
[87] *Id.*
[88] *Id.*
[89] *Id.*

16

"all revenue in whatever form received or accrued from whatever source, including from the sales of products or services."[90] It appears from the record that the SBA considered the factors set forth in section 121.107, including the distribution of receipts and the costs of doing business among Shop Rite's different business activities.[91] Considering these factors, the revenues and costs associated with Shop Rite's food service activities are only about 10% of its revenues and costs associated with its gasoline sales. Accordingly, even assuming that 70% of Shop Rite's locations and employees have some involvement in food sales, the SBA did not clearly err in concluding that, on balance, Shop Rite's primary industry does not fall under one of the NAICS codes beginning with "72" based on its sales of food items. The Court, therefore grants summary judgment with respect to Shop Rite's claim that the SBA acted arbitrarily and capriciously.

### C. Was the SBA's Conclusion that Shop Rite Was Part of an Affiliated Group Arbitrary and Capricious?

Shop Rite next challenges the SBA's affiliate grouping determination. 13 C.F.R. § 121.103(a) provides the general rules for determining whether business concerns or entities are "affiliates" and thus grouped together for purposes of applying the employee-size standards under 13 C.F.R. § 121.201. Section 121.103 states that business concerns and entities "are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both."[92] This regulation further states that "it does not matter whether control is exercised, so long as the power to control exists."[93] The SBA found that Shop Rite was related to five other companies: Tobacco Plus, Inc. ("Tobacco Plus"), Acadia Wholesale

---

[90] 13 C.F.R. § 121.104.
[91] Administrative Record, ECF No. 24-7 at 705-721; 1602-1603.
[92] 13 C.F.R. § 121.103.
[93] *Id.*

17

& Tobacco Co. ("Acadiana Wholesale & Tobacco"), Deep South Enterprises, Inc. ("Deep South Enterprises"), J. D. Gielen & Family, LLC, and Rice City Storage, LLC ("Rice City Storage").[94] Of these companies, the SBA notes that Shop Rite, Rice City Storage, Tobacco Plus, and Acadia Wholesale & Tobacco all took out PPP loans. The record further reflects that Shop Rite, Tobacco Plus, and Acadia Wholesale & Tobacco are "more than 50.1% owned by three different voting trusts."[95] According to the SBA, these trusts "are all listed as 100% owned by Peggy Gielen which would affiliate these three companies together based on identity of interest."[96]  The SBA notes that these three companies alone exceed the employee eligibility threshold because they have a total of 893 employees.[97] The SBA also notes that a single individual who is a close member of Peggy Gielen's family, John Cody Gielen, "is the President [and] Chief Executive Officer of Shop Rite, Inc., Tobacco Plus, Inc., and Acadia Wholesale & Tobacco Co., Inc."[98]

Shop Rite argues that these three business concerns are not affiliates by virtue of Peggy Gielen's ownership of trust certificates for the trusts holding the equity interests in those business concerns. According to Shop Rite, this evidence "does not show common ownership of the three entities, because ownership of a trust certificate evidencing a beneficial interest in shares owned by the trust, is not the legal or functional equivalent of ownership of shares in the company."[99] These "three entities were majority owned by three different voting trusts, which are legal entities distinct from each other."[100] Shop Rite also argues that these three business concerns do not share

---

[94] ECF No. 24-10 at 9-14.
[95] *Id.* at 14.
[96] *Id.*
[97] *Id.*
[98] *Id.* at 16.
[99] ECF No. 30 at 20.
[100] *Id.*

an identity of interest based on Mrs. Gielen's ownership of the trust certificates.[101] Shop Rite, however, does not address the SBA's finding that one person, who is a close member of Mrs. Gielen's family, serves as the President and CEO of all three business concerns.

Considering the record as a whole, the Court concludes that the SBA did not act arbitrarily or capriciously, or otherwise commit a clear error in concluding that Shop Rite was affiliated with two other entities and that the total number of employees for these three entities combined exceeded the eligibility threshold in 13 C.F.R. § 121.201. Section 121.103 makes control the dispositive factor in determining affiliation. The record indicates, and Shop Rite apparently does not dispute, that Mr. Gielen served as the President and CEO of all three entities—including Shop Rite. As the President and Chief Executive Officer of these three entities, Gielen had the power to control each of the three entities. One of the factors that SBA considers in determining affiliation is not only ownership, but common management.[102] Here, the record reflects common management. Accordingly, the SBA did not act arbitrarily or capriciously, or otherwise commit a clear error, when it concluded that, under the applicable statutes and regulations, Shop Rite, Tobacco Plus, and Acadia Wholesale & Tobacco are affiliated and that, combined, they employ approximately 893 employees. The Court grants the SBA summary judgment on Shop Rite's claim that the SBA acted arbitrarily and capriciously in applying the affiliation rule in 13 C.F.R. § 121.103.

---

[101] *Id.*
[102] 13 C.F.R. § 121.103(a)(2).

## IV.
### CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Shop Rite's Motion for Summary Judgment [ECF No. 25] is DENIED.

IT IS FURTHER ORDERED that the SBA's Motion for Summary Judgment [ECF No. 33] is GRANTED. Shop Rite's claims asserted herein are DISMISSED.

THUS DONE in Chambers on this _____ day of December, 2024.


**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**