# United States Court of Appeals
# for the Fifth Circuit

---

No. 25-30028
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2025

Lyle W. Cayce
Clerk

SHOP RITE, INCORPORATED,

Plaintiff—Appellant,

versus

UNITED STATES SMALL BUSINESS ADMINISTRATION,

Defendant—Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:23-CV-456

---

## JUDGMENT

Before HIGGINBOTHAM, HO, and DOUGLAS, *Circuit Judges*.

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that Appellant pay to Appellee the costs on appeal to be taxed by the Clerk of this Court.

No. 25-30028

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See FED. R. APP. P. 41(B). The court may shorten or extend the time by order. See 5TH CIR. R. 41 I.O.P.

Certified as a true copy and issued
as the mandate on Mar 13, 2026

Attest: *Tyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

2

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2025

Lyle W. Cayce
Clerk

———————

No. 25-30028

———————

SHOP RITE, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

UNITED STATES SMALL BUSINESS ADMINISTRATION,

*Defendant—Appellee.*

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:23-CV-456

———————————————————

Before HIGGINBOTHAM, HO, and DOUGLAS, *Circuit Judges*.
PER CURIAM:[*]

Shop Rite, Inc. ("Shop Rite") appeals the Western District of Louisiana's grant of summary judgment in favor of the United States Small Business Administration ("SBA"). For the reasons that follow, we AFFIRM the district court's decision.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-30028

## I

On April 3, 2020, Shop Rite applied for a loan through the Paycheck Protection Plan ("PPP") with National Bank of Louisiana ("Lender"). On April 15, 2020, the Lender approved the loan and disbursed $2,502,750.00 to Shop Rite. Shop Rite applied for PPP loan forgiveness on June 23, 2021. The SBA Office of Capital Access issued a final PPP loan review decision finding that Shop Rite is not eligible for loan forgiveness because it was ineligible for the PPP loan. The SBA determined that Shop Rite was ineligible because it, combined with its affiliates, exceeded the 500-employee limit. The SBA specifically found that Shop Rite and its affiliates have 896 employees and that, despite numerous requests by the SBA, Shop Rite has not provided documentation proving that it did not exceed the employee limit.

Shop Rite timely appealed the loan review decision with the SBA Office of Hearings and Appeals ("OHA"), arguing that SBA erred in applying the primary industry test to determine whether Shop Rite was eligible for an affiliation waiver. The OHA affirmed the final PPP loan review decision, determining that Shop Rite, alone and combined with its affiliates, exceeded the 500-employee eligibility limit. The OHA further determined that Shop Rite should not be assigned an industry code associated with restaurants and it was therefore ineligible for a waiver that would exclude the employee count of its affiliates. Shop Rite timely filed an amended request for reconsideration. Finding no clear error of law, the OHA denied Shop Rite's petition for rehearing and affirmed the initial decision affirming the final SBA loan review decision.

Shop Rite appealed the OHA's decision in the Western District of Louisiana. Shop Rite and the SBA filed cross motions for summary judgment. Holding that the SBA did not act arbitrarily or capriciously or

2

otherwise clearly err, the district court denied Shop Rite's motion and granted SBA's motion.[1] Shop Rite then filed the present appeal.

## II

Congress enacted the Small Business Act of 1953, which later established the SBA to "'aid, counsel, assist, and protect . . . small business concerns.'" 15 U.S.C. § 631(a); *see* 15 U.S.C. § 633(a). The SBA "was given extraordinarily broad powers to accomplish these important objectives," *SBA v. McClellan*, 364 U.S. 446, 447 (1960), including rulemaking authority, *see* 15 U.S.C. § 634(b); investigatory authority, § 634(b)(11); and authority to take "any and all actions" that are "necessary or desirable in . . . dealing with or realizing on loans made under [Section 7(a)]," § 634(b)(7).

## A

The SBA finances and guarantees private loans, known as "Section 7(a) loans," to address small business concerns. *Seville Indus., L.L.C. v. U.S. SBA*, 144 F.4th 740, 742 (5th Cir. 2025); *see* 15 U.S.C. § 636(a). Generally, Section 7(a) determines whether an applicant constitutes a "small business concern" based on size standards associated with the business's North American Industry Classification System industry code ("NAICS code") related to its "types of economic activity or industry." *Id.* 15 U.S.C. § 632(a)(2); 13 C.F.R. § 121.101(a) (citation modified); *see* 13 C.F.R. § 120.100(d). For example, NAICS code "722513" is appropriate for "limited-service restaurants" and other codes beginning with "72" are

---

[1] The district court did not address the OHA's determination that Shop Rite alone exceeded the 500-employee eligibility threshold. Our court, likewise, does not address this issue.

No. 25-30028

appropriate for other types of "food services and drinking places."[2] 13 C.F.R. § 121.201. To qualify for Section 7(a) loan eligibility, a business must fall within the annual revenue limits or maximum employment values the SBA has established for each NAICS code. *See id.*

More specifically, a Section 7(a) business loan applicant must satisfy two size criteria. 13 C.F.R. § 121.301(a). First, the applicant, by itself, "must not exceed the size standard designated for the industry in which the applicant is *primarily engaged.*"[3] 13 C.F.R. § 121.301(a)(1) (emphasis in original). Second, "[t]he size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher." 13 C.F.R. § 121.301(a)(2). A set of "affiliation" rules, based on certain factors, dictate when the second size criteria provided in Section 121.301(a)(2) applies. *See* 13 C.F.R. § 121.103(a)(8); 13 C.F.R. 121.301(f).

Section 121.107 dictates the SBA's method to determine a borrower's primary industry:

> In determining the primary industry in which a [business] or a [business] combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed

---

[2] Another pertinent example is NAICS code "457110," which includes "gasoline stations with convenience stores." 13 C.F.R. § 121.20. Initially, in its loan forgiveness application, Shop Rite self-certified as having NAICS code "447110," which it contended is associated with "gasoline stations with convenience stores."

[3] Section 121.301(b)(1) indicates that the same standards outlined in paragraph (a) of this section apply to Section 7(a) loans. 13 C.F.R. § 121.301(b)(1). Paragraph (b)(2) of the same section provides alternate standards applicable to Section 7(a) loans, but Shop Rite does not argue that these alternate standards apply to it. 13 C.F.R. § 121.301(b)(2).

No. 25-30028

fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.

13 C.F.R. § 121.107.

B

The SBA was critical in providing relief to small businesses during the COVID-19 Pandemic. In response to the Pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide emergency assistance to Americans. Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020). Among other forms of relief, the CARES Act provided small businesses with forgivable, low-interest loans that were guaranteed by the federal government and promoted employment continuity for employees of small businesses. *Seville Ind.*, 144 F.4th at 742 (citing *Ramey & Schwaller, LLP v. Zions Bancorporation NA*, 71 F.4th 257, 258 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 571 (2024)). To achieve this goal, the CARES Act created the Paycheck Protection Program ("PPP") "to help small businesses keep workers employed during the crisis." *Seville*, 144 F.4th at 742 (quoting *Ramey & Schwaller*, 71 F.4th at 258) (citation modified); *see* 15 U.S.C. § 9001.

Congress authorized the SBA to "guarantee covered loans under the same terms, conditions, and processes as a loan made under [Section 7(a)]" "[e]xcept as otherwise provided in [Section 636(a)]." 15 U.S.C. § 636(a)(36)(B). While most of the provisions of Section 7(a) apply to the PPP loan program, Section 636(a) provides two notable differences. First, Section 636(a) expanded loan eligibility beyond the "small business concerns" covered by Section 7(a) to include "any business concern" with

5

500 employees or fewer.[4] 15 U.S.C. § 636(a)(36)(D)(i). Second, Section 636(a) created an exception to the affiliation rule ("Affiliation Waiver") applicable to businesses with fewer than 500 employees and a NAICS code associated with restaurants and other hospitality-related industries. 15 U.S.C. § 636(a)(36)(D)(iv)(I).

The CARES Act was enacted quickly in response to the Pandemic. Congress instructed the SBA to implement the PPP within fifteen days of the Act's efficacy.[5] *See* 15 U.S.C. § 9012; *Seville*, 144 F.4th at 743–44. The SBA issued an interim final rule ("IFR") within its fifteen-day deadline. The First IFR, issued on April 15, 2020, indicated that the PPP is a "new Section 7(a) program" and that businesses that are ineligible for Section 7(a) loans under Section 120.110 are likewise ineligible for PPP loans. 85 Fed. Reg. 20811 (April 15, 2020).

Prior to Shop Rite's PPP application, the SBA issued a Second IFR on June 1, 2020, establishing a PPP loan review program pursuant to its authority to audit and investigate loan compliance established by 15 U.S.C. § 634(b)(6), (7), and (11). *See* 85 Fed. Reg. 33010 (June 1, 2020); *see also Seville*, 144 F.4th at 744. The loan review program helped the SBA combat abuse of the PPP loan program. *See Seville*, 144 F.4th at 744 (providing that "[t]he PPP's rapid implementation and reliance on self-certification in the early days of the pandemic made it a target for fraud"). The Second IFR

---

[4] This provision includes an alternate size criteria which states, "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern . . . operates." 15 U.S.C. § 636(a)(36)(D)(i)(II). Shop Rite has not argued that it falls under the alternate size criteria provided in 15 U.S.C. § 636(a)(36)(D)(i)(II).

[5] Due to the swift implementation, Congress directed the SBA to disregard the APA's notice requirement under 5 U.S.C. § 553(b). *See* 15 U.S.C. § 9012; *Seville*, 144 F.4th at 743–44.

No. 25-30028

clearly provides that "SBA may undertake a review at any time in SBA's discretion." 85 Fed. Reg. 33010 (June 1, 2020). This audit includes reviewing a "borrower['s] certifications and representations regarding the borrower's eligibility for a PPP loan." 85 Fed. Reg. 33010 (June 1, 2020). The expeditious implementation of the PPP meant that the program was a source of confusion for many businesses, especially in the early years of the Pandemic.

### III

We review the district court's grant of summary judgment de novo, and we review the SBA's actions under the standard of review outlined in the Administrative Procedure Act ("APA"). *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 344 (5th Cir. 2025) (citing *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001)). The APA mandates that a reviewing court set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "in excess of statutory jurisdiction . . . ;" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (C), and (E).

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled the deferential standard created by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Loper Bright*, we must "'exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority.'" *United Nat. Foods, Inc. v. NLRB*, 138 F.4th 937, 946 (5th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 412). While an agency's interpretation may not supersede the role of the judiciary in interpreting statutory meaning, "'when a particular statute delegates authority to an agency consistent with constitutional limits, [we] must respect the delegation.'" *United Nat. Foods*, 138 F.4th at 946 (quoting *Loper Bright*, 603 U.S. at 412–13).

7

When Congress has statutorily "delegate[d] discretionary authority to an agency, the role of the reviewing court under the APA is . . . to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 603 U.S. at 395. The reviewing court must "ensur[e] the agency has engaged in '"reasoned decisionmaking"' within [the] boundaries" of its delegated authority. *Loper Bright*, 603 U.S. at 395 (citing *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998))). In so doing, the reviewing court may consider an agency's statutory interpretation as "'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Loper Bright*, 603 U.S. at 394 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

## IV

To be eligible for PPP loan forgiveness under the facts of the present case, Shop Rite must either have fewer than 500 employees when combined with its affiliates or be properly assigned a NAICS code associated with the restaurant industry such that it qualifies for the Affiliation Waiver.[6] It is undisputed that the number of employees of Shop Rite, combined with those of its affiliates, exceeds the PPP eligibility threshold.[7] Shop Rite argues that because it validly self-certified as having a NAICS code associated with

---

[6] Restaurant-related businesses are associated with NAICS codes in the "72" series. *See* 13 C.F.R. § 121.201. Shop Rite does not argue that an ineligible PPP loan recipient would nevertheless be eligible for loan forgiveness. Regardless, our court recently foreclosed this theory in *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341 (5th Cir. 2025) (holding that a borrower who is ineligible to receive a PPP loan is de facto ineligible for PPP loan forgiveness).

[7] Although Shop Rite argued in its reply brief that the district court erred in affirming SBA's decision that Shop Rite is affiliated with certain entities, we do not consider this issue because Shop Rite failed to raise it in its opening brief. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015).

No. 25-30028

limited-service restaurants, it is subject to the Affiliation Waiver, and therefore, is eligible for PPP loan forgiveness. Shop Rite argues that SBA unlawfully applied the primary industry test. We disagree.

The district court found that, in accordance with *Loper Bright*, Congress empowered the SBA to promulgate regulations that establish the methodology to determine the size eligibility for Section 7(a) loans.[8] *Shop Rite*, No. 6:23-CV-00456, 2024 WL 5183329, at *5 (W.D. La. Dec. 19, 2024) (citing 13 C.F.R. 121.101–1103). As detailed *supra*, Section 121 indicates that loan eligibility is determined based on size standards established in accordance with the NAICS code associated with the borrower's primary industry. The district court also found that the CARES Act "does not detail how the SBA is to apply the 500-employee size standard or how the SBA is to assign the applicable NAICS code to a borrower" and that the SBA was entitled to utilize the primary industry size standards established in the Section 7(a) program to administer PPP loans. *Id.* at *6.

Shop Rite posits four primary issues on appeal: (A) whether SBA violated the CARES Act by using Section 7(a) loan affiliation rules to determine Shop Rite's PPP loan eligibility; (B) whether SBA had authority to assign a NAICS code to Shop Rite after it had self-certified; (C) whether the SBA's reasoning for denying Shop Rite's eligibility for the Affiliation Waiver was arbitrary and capricious; and (D) whether the application of the primary industry method was prohibited *post hoc* justification. We address each issue in turn.

---

[8] Shop Rite does not challenge on appeal the SBA's authority to promulgate the regulations set forth in Section 121.

No. 25-30028

## A

First, the district court did not err in affirming SBA's application of the primary industry test to determine Shop Rite's PPP loan eligibility. Like the district court, we first look to the text of the statute at issue, which states that the Affiliation Waiver is available to "any business concern with not more than 500 employees that . . . is assigned a North American Industry Classification System code beginning with 72." 15 U.S.C. § 636(a)(36)(D)(iv)(I). The text neither explains how to assign the applicable NAICS code nor forecloses use of the primary industry standard. Because of the statutory silence, the SBA relied on its clearly granted authority to administer the PPP loan program under the Section 7(a) loan eligibility framework. *See* 15 U.S.C. § 636(a)(36)(B).

The CARES Act specifically provides that the SBA may rely on Section 7(a) "terms, conditions, and processes" to guarantee PPP loans "except as otherwise provided." 15 U.S.C. § 636(a)(36)(B). Further, the First IFR indicated that any business that is ineligible under Section 7(a) is also ineligible to receive a PPP loan. 85 Fed. Reg. 20811 (Apr. 15, 2020). Thus, Congress clearly intended for the SBA to rely on its Section 7(a) loan framework.

Looking to the eligibility provisions outlined in Section 7(a), eligibility is determined based on a borrower's primary industry: a borrower "must not exceed the size standard designated for the industry in which the applicant is *primarily engaged*." 13 C.F.R. § 121.301(a)(1) (emphasis added). Therefore, the SBA appropriately relied on the loan eligibility framework established in the provisions governing Section 7(a) loans to determine that the primary industry test should be used to determine Affiliation Waiver eligibility. Thus, the district court correctly determined that "the applicable eligibility limit for a borrower under the Section 7(a) loan program is determined by a single

10

No. 25-30028

NAICS code that reflects a borrower's primary business." The district court, therefore, did not err in affirming the SBA's decision to determine Shop Rite's PPP loan eligibility based on its primary industry.

Shop Rite makes two additional, related arguments: that the SBA's application of the primary industry requirement to preclude its eligibility for the Affiliation Waiver (1) conflicts with the agency's published guidance on the subject and (2) violates the Fair Notice and Good Fatih Reliance doctrine. As to the first argument, Shop Rite cites to answer number twenty-four to a set of frequently asked questions ("FAQs") related to PPP compliance published by the SBA in July of 2021. SBA, *FAQ for PPP Borrowers and Lenders*, U.S. Small Bus. Admin. (Oct. 21, 2025), https://www.sba.gov/document/support-faq-ppp-borrowers-lenders. The answer to question number twenty-four states, in pertinent part, that "SBA's affiliation rules ... do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees ...."[9] *Id.* As explained earlier in this subsection A, like the text of the CARES Act itself, the FAQ that Shop Rite invokes neither provides a method by which to assign a NAICS code to an applicant nor forecloses the use of the eligibility rules established under the Section 7(a) loan program.

Regarding its Fair Notice and Good Faith Reliance argument, Shop Rite analogizes its situation to that in *Wages and White Lion Investments, L.L.C. v. Food & Drug Administration*, 90 F.4th 357 (5th Cir. 2024) (en banc), *vacated*, 604 U.S. 542 (2025), in which our court held that an entity cannot be penalized for reliance on an agency's previous position when the agency

---

[9] Our court addresses Shop Rite's argument without commenting on the binding effect of the FAQs or the applicability of FAQs published after the final SBA loan review decision was entered.

No. 25-30028

has violated the change-in-position doctrine or changed its position without giving proper public notice. 90 F.4th at 371. We fail to understand how this holding in *Wages and White Lion Investments* precludes the SBA's determination that Shop Rite is ineligible for loan forgiveness because Shop Rite has indicated no prior agency position on which it relied.[10] Shop Rite merely contends that the SBA's "guidance documents on PPP Affiliation Waiver" do not clearly indicate that eligibility would be determined based on a borrower's primary business activity. This argument does not indicate a shift in agency position, as was at issue in *Wages and White Lion Investments*; rather, it restates Shop Rite's prior argument that the primary industry test should not apply because the CARES Act does not specifically require it. Again, Shop Rite does not cite any position on which the SBA has changed its stance. Therefore, the analysis provided earlier in this subsection A applies here as well.

As detailed earlier in this subsection A, both the CARES Act, itself, and the aforementioned IFRs published alongside it clearly establish that typical requirements pertaining to Section 7(a) loan eligibility apply to PPP loan eligibility. The authorities that Shop Rite cites do not controvert the eligibility framework applicable to Section 7(a) loans; therefore, Shop Rite's arguments are unconvincing.

## B

Next, the SBA did not exceed its congressionally delegated authority to assign a NAICS code to Shop Rite. Shop Rite argues that the SBA did not have authority to "clarify, complete, or supply" a NAICS code to an

---

[10] Furthermore, the Supreme Court vacated our court's holding that the agency at issue in *Wages and White Lion Investments* violated the change-in-position doctrine. *Wages and White Lion Invs.*, 604 U.S. at 569–86. For this reason, as well, Shop Rite cannot rely on *Wages and White Lion Investments* to bolster its argument.

entity that already has self-certified a NAICS code. As described earlier, Congress granted the SBA authority to administer the PPP loan program as it would Section 7(a) loans. Congress granted the SBA broad authority to administer the Section 7(a) loan program, including investigatory authority. Pursuant to that authority, the SBA issued the Second IFR that detailed how it would ensure compliance with the PPP loan program, and we find that, in so doing, the SBA "engaged in '"reasoned decisionmaking"' within [the] boundaries" of its delegated authority. *Loper Bright,* 603 U.S. at 395 (citing *Michigan,* 576 U.S. at 750 (quoting *Allentown Mack Sales & Service,* 522 U.S. at 374)); s*ee* 85 Fed. Reg. 33010 (June 1, 2020). Therefore, as part of its loan review program, the SBA had authority to ensure Shop Rite was assigned the appropriate NAICS code.

Shop Rite further argues that the SBA's finding here contradicts its stance in another case regarding PPP loan eligibility, *Horseshoe Bay Resort Holdings v. U.S. SBA et. al*, No. 1:24-CV-00040-DAE, 2025 WL 2697494 (W.D. Tex. Sept. 15, 2025) (unpublished). Shop Rite incorrectly contends the SBA stated in *Horseshoe Bay* that it lacks authority to assign a NAICS code when a business has self-certified a NAICS code. Rather, the SBA argued that it is not *required to disregard* a business's self-certification. *Horseshoe Bay Resort Holdings*, 2025 WL 2697494, at *6. Although the SBA chose not to change the borrower's self-certified NAICS code in *Horseshoe Bay*, it is not arbitrary and capricious for the SBA to here decide that the methodology outlined in the Section 7(a) framework is an appropriate method to determine Shop Rite's loan compliance, especially considering the IFR's clear guidance to review self-certification. Therefore, Shop Rite's argument fails.

No. 25-30028

## C

Further, the SBA's decision to deny the Affiliation Waiver to Shop Rite was not arbitrary and capricious. Shop Rite argues that because more than seventy percent of its locations and employees are engaged in food service activities, SBA's denial of the Affiliation Waiver is arbitrary and capricious. Shop Rite contends that this level of involvement qualifies it for a NAICS code beginning with "72" associated with the food service industry. SBA's regulations permit SBA to "consider[] the distribution of receipts, employees and costs of doing business" when determining an entity's primary industry. 13 C.F.R. § 121.107. The SBA defines "receipts" as "all revenue in whatever form received or accrued from whatever source, including from the sales of products or services." 13 C.F.R. § 121.104.

Substantial evidence in the administrative record supports the SBA's decision not to assign Shop Rite a NAICS code beginning with "72." The district court found that "the revenues and costs associated with Shop Rite's food service activities are only about 10% of its revenues and costs associated with its gasoline sales." *Shop Rite*, 2024 WL 5183329, at *7. The OHA similarly determined that only about two percent of Shop Rite's company expenses and about ten percent of its total income come from running its deli. Thus, the "highly deferential" substantial evidence standard supports the SBA's finding that Shop Rite's primary industry is not correlated to a "72" series NAICS code. The district court, therefore, did not err in affirming the OHA's decision that the SBA was entitled to deny Shop Rite's use of the Affiliation Waiver.

## D

Finally, SBA's reliance on the primary industry test to deny Shop Rite's use of the Affiliation Waiver is not a prohibited *post hoc* justification for denying loan eligibility. In its argument to the contrary, Shop Rite again relies

14

No. 25-30028

on our court's decision in *Wages and White Lion Investments*, in which we held that the FDA acted arbitrarily and capriciously because it "invent[ed] *post hoc* justifications" that were outside the administrative record to support its decision. 90 F.4th at 371. Here, the SBA articulated a reason for denying PPP loan forgiveness then clarified its holding when pressed on appeal. Shop Rite does not convince us that the SBA manufactured justification *post hoc*.

The final SBA loan review decision stated, "the Borrower's business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." The OHA then reviewed the administrative record and expressed in detail that Shop Rite and its affiliates exceed the eligibility threshold because the primary industry test forecloses Shop Rite's eligibility for the Affiliation Waiver. "When an agency's initial explanation indicates the determinative reason for the final action taken, the agency may elaborate later on that reason." *Bruckner*, 148 F.4th at 346 (quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (citation modified)). There is no indication that the OHA reached outside the administrative record to provide *post hoc* justification.

## V

For the foregoing reasons, we AFFIRM the district court's decision.

15

# United States Court of Appeals
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

March 13, 2026

Mr. Daniel J. McCoy
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

        No. 25-30028    Shop Rite v. SBA
                        USDC No. 6:23-CV-456

Dear Mr. McCoy,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk
                    *Amanda M. Duroncelet*
                    By: _____
                    Amanda M. Duroncelet, Deputy Clerk
                    504-310-7636